| | |
|---|---|
| Bobby Lee Willingham, | Civil Action No. 2:09-cv-3244-RMG-RSC |
| Plaintiff, | |
| vs. | **ORDER** |
| Michael J. Astrue, Commissioner of Social Security Administration, | |
| Defendant. | |

Through this action, Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This matter is currently before the Court for review of the Report and Recommendation of Magistrate Judge Robert S. Carr, made in accordance with 28 U.S.C. §§ 636(b)(1)(B) and Local Rules 73.02(B)(2)(a) and 83.VII.02, et seq., D.S.C. The Magistrate Judge has recommended the Commissioner's decision be affirmed. The Plaintiff timely filed objections to the Magistrate Judge's Report and Recommendation. For reasons set forth below, the Commissioner's decision is reversed and remanded pursuant to the provisions of 42 U.S.C. § 405(g) for the submission and receipt of additional evidence. *Borders v. Heckler*, 777 F. 2d 954, 955-56 (4th Cir. 1985).

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 273 (1976). The Court is charged with making a *de novo* determination of those portions of the Report to which specific objection has been made,

-1-

and the Court may accept, reject or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1).

The role of the Federal Judiciary in the administrative scheme established by the Social Security Act ( "Act") is a limited one. Section 205(g) of the act provides that the "findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...". 42 U.S.C. § 405(g). "Substantial evidence has been defined as more than a scintilla, but less than a preponderance." *Thomas v. Celebreeze*, 331 F. 2d 541, 543 (4th Cir. 1964). This standard precludes a *de novo* review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F. 2d 1157 (4th Cir. 1971). The Court must uphold the Commissioner's decision so long as it is supported by substantial evidence and made in accord with controlling law. *Blalock v. Richardson*, 483 F. 2d 773, 775 (4th Cir. 1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F. 2d 278, 279 (4th Cir. 1969).

The Commissioner's denial of benefits shall be reversed only if no reasonable mind could accept the record as adequate to support the determination. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Commissioner's findings of fact are not binding, however, if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F. 2d 514, 517 (4th Cir. 1987).

Where evidence is offered to the District Court which was not presented to the Administrative Law Judge ("ALJ"), it is not proper for the District Court to consider such evidence in determining whether there is substantial evidence in the record to support the

Commissioner's decision. *Smith v. Chater*, 99 F. 3d 635, 638, n.5 (4th Cir. 1996). A District Court may, under limited circumstances, remand a Social Security disability matter to the Commissioner for "additional evidence to be taken...upon a showing that there is new evidence which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. 405(g). In order to avoid abuse of the remand procedure by claimants, the Fourth Circuit has established rigorous requirements for a so-called "sentence six" remand: (1) the evidence must be relevant to the determination of disability at the time the application was first filed and not merely cumulative; (2) the evidence must be material; (3) there must be good cause for failure to submit the evidence to the Commissioner; and (4) the claimant must present to the remanding court a general showing of the nature of the new evidence. *Borders v. Heckler*, 777 F. 2d at 955-56.

## BACKGROUND

Plaintiff submitted applications for DIB and SSI alleging he was disabled on and after September 7, 2004. Plaintiff asserted a variety of chronic medical conditions (including severe hypertension, renal insufficiency, sleep apnea and reflux disease) and mental disorders (including depression, headaches and dizziness). (Tr. at 150). Initial in-person evaluation of Plaintiff raised questions about his "limited comprehension" and "real trouble remembering some dates." (Tr. at 143). During the pendency of Plaintiff's applications, he experienced an intracranial hemorrhage on September 3, 2006, apparently secondary to his uncontrolled hypertension, which produced significant mental status changes documented in the course of a ten day hospitalization. (Tr. at 430-31, 433, 434, 467, 468 and 470). At discharge, Plaintiff's treating neurologist documented that the "patient has been confused throughout his hospitalization, although this is showing continued improvement." (Tr. at 470). Plaintiff was to

be followed after his discharge by his neurologist and his family physician but scant records were offered to document his mental status subsequent to his discharge from the hospital on September 13, 2006. (Tr. at 470-71).

Plaintiff's treating family physician, Dr. Stephen D. Cayelli, submitted a "To Whom It May Concern" letter on December 21, 2007 indicating that Plaintiff had significant memory disorders as a result of his intracranial hemorrhage. He noted that his memory difficulties, "while somewhat improved" would limit his ability to work. Dr. Cayelli observed that Plaintiff had not followed up with his neurologist. Dr. Cayelli did not produce office notes, testing materials or other data to support his opinions. (Tr. at 409).

Plaintiff was seen in a consultive examination on December 3, 2008, by Dr. Spurgeon N. Cole, Phd., who found the patient "difficult to evaluate." (Tr. at 412). He found the Plaintiff's test results highly inconsistent and concluded the patient was "promoting symptoms." (Tr. at 411). Despite his unreliable test results, Dr. Cole indicated that "I suspect that borderline cognitive ability would be the extent of his ability" and diagnosed Plaintiff with "probably borderline cognitive ability." (Tr. at 412). Dr. Cole did not specify which aspects of Plaintiff's cognition caused him to reach the conclusion that the patient had only "borderline" cognitive function.[1]

---

[1] Dr. Cole also completed a form "Medical Source Statement of Ability to do Work-Related...Activities" which concluded the patient "has borderline or better cognitive ability." (Tr. at 415). The suggestion that Plaintiff's cognitive ability might be "better" than borderline appears inconsistent with Dr. Cole's consultive report and diagnosis. (Tr. at 410-13).

—4—

Plaintiff had an initial hearing before the ALJ on November 3, 2008, which was adjourned to allow Plaintiff to obtain further evaluation by a neurologist. (Tr. at 561). The hearing was reconvened by another ALJ on June 17, 2009, but no further neurological reports or assessments were offered. Plaintiff's counsel asserted that his client did not have the funds to pay for his neurological assessment. (Tr. at 28). The ALJ issued his decision on June 24, 2009, finding that Plaintiff was not disabled. (Tr. at 13-22). The ALJ gave "little weight" to the opinion of Plaintiff's treating physician, Dr. Cayelli, noting that there was little support in the record for his opinion of significant mental status changes as a result of the intracranial hemorrhage. (Tr. at 19-20).

Plaintiff requested review by the Appeals Council on June 24, 2009, and submitted a new report of Dr. David Cannon, Ph.D., on August 24, 2009 (Tr. at 535-38). The report was based upon an evaluation conducted by Dr. Cannon on July 9, 2009. Dr. Cannon reported that Plaintiff had a full scale IQ of 68 and a "low level of comprehension", which he believed "raise[d] the possibility of some type of cerebral dysfunction." He also reported his clinical observation that Plaintiff was confused and opined that "it is entirely unlikely that he would be able to function effectively in a conventional work setting." (Tr. at 537). The Appeals Council declined to review the matter on October 29, 2009. (Tr. at 1). Thereafter, Plaintiff filed his Complaint initiating this action in District Court.

## DISCUSSION

A threshold issue for the Court is whether the report of Dr. Cannon, which was not presented to the ALJ, is of such a character and significance that remand to the Commissioner is necessary to properly evaluate this application for benefits. Under the *Borders* standards, the Court must first determine whether the information is "relevant" and "not merely cumulative."

777 F. 2d at 955. The information regarding the Plaintiff's confusion, low comprehension and possible "cerebral dysfunction" is certainly relevant to his claim of disability and is not cumulative. Indeed, the report represents an additional piece of evidence which relates to the alleged ongoing mental status dysfunction associated with Plaintiff's September 2006 intracranial hemorrhage. Moreover, unlike the findings of Dr. Cole, Dr. Cannon appears to have obtained what he believed to be reliable results from mental status testing. (Tr. at 412, 537).

Second, the Court under the *Borders* standards must determine that the new evidence is "material". 777 F. 2d at 955. As indicated above, the Cannon report does materially relate to significant issues concerning Plaintiff's mental status and ability to perform work. Additionally, the Cannon report may provide support for the opinions of Plaintiff's treating physician, which may be relevant to the weight given to Dr. Cayelli's testimony. 20 CFR § 404.1527(d)(2). The Court finds the Cannon report to be "material" to the claims for disability.

Third, the Plaintiff must establish "good cause" for the failure to submit the evidence to the ALJ. *Id.* This standard is designed to avoid the situation where claimants could submit previously available evidence after an adverse decision in order to obtain a second "bite at the apple." *Brown v. Schweiker*, 557 F. Supp. 190, 192 (M.D. Fla. 1983). In this particular situation, Dr. Cannon did not perform his evaluation until July 9, 2009, which was subsequent to the issuance of the ALJ's decision on June 24, 2009. The Cannon report is similar to the circumstances the Fourth Circuit confronted in *Borders*, where the late report arose from a procedure that was performed after the ALJ's decision. 777 F. 2d at 955. Under these circumstances, the Court finds "good cause" for the Plaintiff's failure to submit the Cannon report to the ALJ.

Fourth, the Plaintiff must make a general showing of the nature of the new evidence to the District Court. *Id.* Plaintiff has submitted Dr. Cannon's full report as part of this record. (Tr. at 537-38). The Court finds that Plaintiff has made a satisfactory showing of the nature of the new evidence to the Court.

Based upon the foregoing, the Court finds that Plaintiff has satisfied the *Borders* standards for remand to the Commissioner to consider the new evidence presented after the ALJ's decision. Therefore, the Court hereby **REVERSES** and **REMANDS** the decision of the Commissioner pursuant to 42 U.S.C. § 405(g) to consider the new evidence and to take further action consistent with this Order. Because of the decision that the case should be remanded, the Court will not consider the other contentions of the parties. *Id.* at 956.

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

December $\underline{14}$, 2010
Charleston, South Carolina