| | | |
|---|---|---|
| Bobby Lee Willingham, | ) | Civil Action No. 2:09-cv-3244-RMG-RSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Michael J. Astrue, Commissioner of Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) ) | |

Through this action, Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This matter is currently before the Court for review of the Report and Recommendation of Magistrate Judge Robert S. Carr, made in accordance with 28 U.S.C. §§ 636(b)(1)(B) and Local Rules 73.02(B)(2)(a) and 83.VII.02, et seq., D.S.C. The Magistrate Judge has recommended the Commissioner's decision be affirmed. The Plaintiff timely filed objections to the Magistrate Judge's Report and Recommendation. The Commissioner filed a reply. For reasons set forth below, the Commissioner's decision is reversed and remanded to allow the Commissioner to set forth that new medical evidence submitted to the Appeals Council after the Administrative Law Judge's decision has been weighed and the weight afforded to that evidence.

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 273 (1976). The Court is charged with making a *de novo*

-1-

determination of those portions of the Report to which specific objection has been made, and the Court may accept, reject or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1).

The role of the Federal Judiciary in the administrative scheme established by the Social Security Act ( "Act") is a limited one. Section 205(g) of the act provides that the "findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ". 42 U.S.C. § 405(g). "Substantial evidence has been defined as more than a scintilla, but less than a preponderance." *Thomas v. Celebreeze*, 331 F. 2d 541, 543 (4th Cir. 1964). This standard precludes a *de novo* review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F. 2d 1157 (4th Cir. 1971). The Court must uphold the Commissioner's decision so long as it is supported by substantial evidence and made in accord with controlling law. *Blalock v. Richardson*, 483 F. 2d 773, 775 (4th Cir. 1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F. 2d 278, 279 (4th Cir. 1969).

The Commissioner's denial of benefits shall be reversed only if no reasonable mind could accept the record as adequate to support the determination. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Commissioner's findings of fact are not binding, however, if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F. 2d 514, 517 (4th Cir. 1987). Further, the Commissioner "must indicate explicitly that all relevant evidence has been weighed and its weight." *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979). Unless the Commissioner explicitly indicates the weight given all relevant evidence, the District Court "cannot determine on

review whether the findings are supported by substantial evidence." *Myers v. Califano*, 611 F.2d 980, 983 (4th Cir. 1980).

## BACKGROUND

Plaintiff submitted applications for DIB and SSI alleging he was disabled on and after September 7, 2004. Plaintiff asserted a variety of chronic medical conditions (including severe hypertension, renal insufficiency, sleep apnea and reflux disease) and mental disorders (including depression, headaches and dizziness). (Tr. at 150). Initial in-person evaluation of Plaintiff raised questions about his "limited comprehension" and "real trouble remembering some dates." (Tr. at 143). During the pendency of Plaintiff's applications, he experienced an intracranial hemorrhage on September 3, 2006, apparently secondary to his uncontrolled hypertension, which produced significant mental status changes documented in the course of a ten day hospitalization. (Tr. at 430-31, 433, 434, 467, 468 and 470). At discharge, Plaintiff's treating neurologist documented that the "patient has been confused throughout his hospitalization, although this is showing continued improvement." (Tr. at 470). Plaintiff was to be followed after his discharge by his neurologist and his family physician but scant records were offered to document his mental status subsequent to his discharge from the hospital on September 13, 2006. (Tr. at 470-71).

Plaintiff's treating family physician, Dr. Stephen D. Cayelli, submitted a "To Whom It May Concern" letter on December 21, 2007 indicating that Plaintiff had significant memory disorders as a result of his intracranial hemorrhage. He noted that his memory difficulties, "while somewhat improved" would limit his ability to work. Dr. Cayelli observed that Plaintiff had not followed up with his neurologist. Dr. Cayelli did not produce office notes, testing materials or other data to support his opinions. (Tr. at 409).

Plaintiff was seen in a consultive examination on December 3, 2008, by Dr. Spurgeon N. Cole, Phd., who found the patient "difficult to evaluate." (Tr. at 412). He found the Plaintiff's test results highly inconsistent and unreliable and concluded the patient was "promoting symptoms." (Tr. at 411). Despite his unreliable test results, Dr. Cole indicated that "I suspect that borderline cognitive ability would be the extent of his ability" and diagnosed Plaintiff with "probably borderline cognitive ability." (Tr. at 412). Dr. Cole did not specify which aspects of Plaintiff's cognition caused him to reach the conclusion that the patient had only "borderline" cognitive function.[1]

Plaintiff had an initial hearing before the ALJ on November 3, 2008, which was adjourned to allow Plaintiff to obtain further evaluation by a neurologist. (Tr. at 561). The hearing was reconvened by another ALJ on June 17, 2009, but no further neurological reports or assessments were offered. Plaintiff's counsel asserted that his client did not have the funds to pay for his neurological assessment. (Tr. at 28). The ALJ issued his decision on June 24, 2009, finding that Plaintiff was not disabled. (Tr. at 13-22). The ALJ gave "little weight" to the opinion of Plaintiff's treating physician, Dr. Cayelli, noting that there was little support in the record for his opinion of significant mental status changes as a result of the intracranial hemorrhage. (Tr. at 19-20).

Plaintiff requested review by the Appeals Council on June 24, 2009, and submitted a new report of Dr. David Cannon, Ph.D., on August 24, 2009 (Tr. at 535-38). The report was based upon an evaluation conducted by Dr. Cannon on July 9, 2009. Dr. Cannon reported that Plaintiff had a full scale IQ of 68 and a "low level of comprehension", which he believed "raise[d] the possibility of

---

[1] Dr. Cole also completed a form "Medical Source Statement of Ability to do Work-Related...Activities" which concluded the patient "has borderline or better cognitive ability." (Tr. at 415). The suggestion that Plaintiff's cognitive ability might be "better" than borderline appears inconsistent with Dr. Cole's consultive report and diagnosis. (Tr. at 410-13).

some type of cerebral dysfunction." He also reported his clinical observation that Plaintiff was confused and opined that "it is entirely unlikely that he would be able to function effectively in a conventional work setting." (Tr. at 537). The Appeals Council declined to review the matter on October 29, 2009, indicating that the newly produced evidence "does not provide a basis for changing the Administrative Law Judge's decision. (Tr. at 1-2). No specific finding was made by the Appeals Council regarding the newly provided evidence or the weight afforded this evidence. Thereafter, Plaintiff filed his Complaint initiating this action in District Court.

## DISCUSSION

A threshold issue for the Court is whether the Commissioner made sufficient findings concerning the weight afforded the report of Dr. Cannon. The Cannon report was not produced until after the ALJ's decision and was, consequently, not considered by the ALJ. The Appeals Council stated that it had reviewed the Cannon report in the course of its decision not to grant a review but made no findings regarding this new evidence or the weight to be afforded to this evidence. (Tr. at 1-2). Upon the decision of the Appeals Council not to grant a review, the ALJ's decision became the decision of the Commissioner.

The failure of the Appeals Council to make any findings regarding the newly presented evidence and the weight afforded the evidence presents a real problem for the Court in exercising its duty to undertake a meaningful judicial review of the administrative decision in this matter. *DeLoatche v. Heckler*, 715 F. 2d 148, 150 (4th Cir. 1983). The Court's review process requires a review of the findings of the Commissioner and a determination of whether those findings are supported by substantial evidence. When the ALJ has not reviewed newly produced evidence and the "court is left in the dark as to how the Appeals Council treated new evidence a meaningful

judicial review is impossible." *Harmon v. Apfel*, 103 F. Supp 2d 869, 874 (D.S.C. 2000) (J. Norton), *citing, Riley v. Apfel*, 88 F. Supp 2d 572, 579 (W.D. Va. 2000). Thus, the Fourth Circuit has held that when new evidence is submitted to the Appeals Council, the court must indicate explicitly that such evidence has been weighed and the weight it was given. *Jordan v. Califano*, 582 F.2d 1333, 1335-36 (4th Cir.1978) (noting that the ALJ must "consider all relevant evidence, including that [given to the Appeals Council], and must indicate explicitly that such evidence has been weighed and its weight."). The Record reveals that was not done here.

A number of District Courts within the District of South Carolina and within the Fourth Circuit have confronted this particular situation where new evidence was not considered by the ALJ, and the Appeals Council, when declining to review the matter, failed to make any findings regarding the new evidence or indicate the weight provided this evidence. *See, Raymond v. Astrue*, 2009 WL 632317 at 5 (D.S.C. 2009) (J. Blatt); *Grant v. Astrue*, 2009 WL 632271 at 3-4 (D.S.C. 2009);, 235 F. Supp 2d 445, 449 (D. Md. 2002); *Hawker v. Barnhart Harmon v. Apfel*, 103 F. Supp 2d at 874; *Alexander v. Apfel*, 14 F. Supp 2d 839 (W.D. Va. 1998). These Courts have remanded the cases to the Commissioner to make sufficient findings upon which meaningful judicial review can be made. As Judge Norton noted in *Harmon*, "the court is caught between trying to provide meaningful judicial review of evidence not considered by the fact finder, while avoiding actually performing the task of weighing and resolving conflicts in the evidence, which is, of course, the function of the ALJ." 103 F. Supp 2d at 872. Further, as Judge Blatt concluded in *Raymond*, "when neither an administrative law judge nor the Appeals Council indicate the weight accorded new evidence, a remand is proper." 2009 WL 632317 at 5. Similarly, in *Sapienza v. Astrue*, 2010 WL 3781998 (D.S.C. 2010) (J. Herlong), in reliance on *Jordan*, the Court remanded in order for the administrative

body to make explicit findings regarding the new evidence and indicate the weight it was given.

The Commissioner argues that the Fourth Circuit's decision in *Wilkins v. Secretary*, 953 F. 2d 93 (4th Cir. 1991) controls here and mandates that no remand is proper to consider the weight to be given to evidence produced for the first time to the Appeals Council. But *Wilkins* deals with a distinctly different situation where the newly produced evidence at the Appeals Council stage involved uncontested medical records from a treating physician, which essentially controlled the outcome of the case. The Fourth Circuit reversed the denial of the disability benefits on the basis of the new evidence and remanded. Here, the new evidence, while relevant and material to the issues to the dispute, does not compel a particular result but must be weighed by the Commissioner in light of all of the evidence available in the record. The Commissioner, and not the Court, must weigh that evidence, which mandates the remand.

This situation is factually more analogous with the Fourth Circuit's decision in *Jordon v. Califano*, 582 F.2d 1333 (4th Cir. 1978), which involved the denial of black lung benefits. The claimant, like the Plaintiff here, submitted new medical evidence to the Appeals Council after the ALJ's decision. The Appeals Council summarily addressed the new evidence in denying review, using similar language to that of the Appeals Council in this action. The Fourth Circuit reversed and remanded the decision, noting that its review was on a substantial evidence standard. "Before we determine the substantiality of the evidence to support the administrative determination, we first ascertain whether the Secretary has discharged his duty to consider all relevant evidence. A bald conclusion, unsupported by reasoning or evidence, is generally of no use to a reviewing court . . . ." *Id.* at 1335. The Court went on to state that "conclusory administrative determinations may conceal arbitrariness." *Id.*

The need for the Commissioner to undertake an appropriate review of this new evidence is particularly appropriate under these circumstances where the Plaintiff had a significant medical development, an intracranial hemorrhage, in September 2006, and little medical follow up from the initial findings that he had experienced significant mental status changes. Plaintiff's treating physician, Dr. Cayelli, offered the opinion that the claimant had significant memory disorders as a result of his brain hemorrhage that limited his ability to care for himself and limited his ability to work. (Tr. at 409). This opinion of the treating doctor was given little weight by the ALJ, in part because "it was not based on any testing showing that the claimant had memory problems." (Tr. at 19). The Cannon report, which was not available at the time of the ALJ decision, reported abnormal IQ results, which caused Dr. Cannon to opine that Plaintiff's "vocational choices would likely be limited to some type of workshop type setting." (Tr. at 537). Dr. Cannon further documented Plaintiff's obvious confusion and "low level of comprehension", which raised "the possibility of some type of cerebral dysfunction." (*Id.*) Thus, these new testing results and Dr. Cannon's report may be significant both in the Commissioner's weighing of the full evidence in the record and as well as the weight afforded the treating physician's testimony under the standards in 20 CFR 404.1527(d)(2).

## CONCLUSION

For the foregoing reasons, the Court **REVERSES** and **REMANDS** the decision pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner to make appropriate findings regarding the evidence produced for the first time to the Appeals Council, including the weight afforded that evidence, and to take further action consistent with this Order. Because of the decision to remand the case, the Court will not consider the other contentions of the parties.

**AND IT IS SO ORDERED.**

                                                            Richard Mark Gergel
                                                            United States District Court Judge

December 15, 2010
Charleston, South Carolina